FLOYD S. PIKE ELECTRICAL CONTRACTOR, INC. v. GOODWILL MISSIONARY BAPTIST CHURCH, THROUGH ITS TRUSTEES AND PASTOR—REVEREND B. H. BONHAM, PASTOR, FREDDIE WEBSTER, CHAIRMAN OF BOARD OF TRUSTEES; LEWIS BROWN, ASSISTANT CHAIRMAN; WILBERT H. CARTER, EARLY JOHNSON, ROY WEBSTER, CLARENCE SMITH, CLARENCE FOYE, MEMBERS OF THE BOARD OF TRUSTEES

No. 7517SC40

(Filed 7 May 1975)

Execution § 1; Religious Societies and Corporations § 2— execution sale of church property

Church property is not exempted from sale under execution by G.S. 61-3 or G.S. 61-6.

APPEAL by defendants from *Collier, Judge.* Judgment entered 17 December 1974 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 19 March 1975.

The parties stipulate the following: On 6 June 1974, plaintiff filed a claim of lien against the Goodwill Missionary Baptist Church of Rockingham County, "through" its pastor and trustees, (defendants) for material furnished and labor rendered to defendants. On 25 July 1974 the defendants executed a verified statement for the purpose of confessing judgment in the amount of $11,500 in favor of plaintiff and on 9 August 1974 a judgment by confession was entered in favor of plaintiff for said amount. On 6 November 1974 an execution was issued to the Sheriff of Rockingham County ordering that the property of defendants, a church sanctuary, be sold to satisfy the judgment. On 26 November 1974 defendants filed a motion asking that the sheriff be enjoined from executing said judgment and on the same day an order was entered directing that plaintiff appear and show cause why the injunction should not be granted. (In their motion for injunction, defendants allege that they desire to pay plaintiff and their other creditors but that "tight money conditions" have made it impossible for them to obtain a loan sufficient to cover obligations.) A hearing was held and on 17 December 1974 judgment was entered denying the motion for an injunction. Defendants appealed.

*Folger & Folger, by Fred Folger, Jr., and Larry W. Bowman, for the plaintiff appellee.*

*Hanes & Rodenbough, by Leigh Rodenbough and Don Eggleston, for the defendant appellants.*

BRITT, Judge.

By their sole assignment of error, defendants contend the trial judge erred in denying their motion for an injunction, arguing that church property is exempt from execution. We find no merit in the assignment.

Defendants base their argument primarily on Chapter 61 of the General Statutes and particularly on G.S. 61-3 and G.S. 61-6 which provide (in pertinent part as to 61-3) as follows:

§ 61-3. *Title to lands vested in trustees, or in societies.*—All glebes, lands and tenements, heretofore purchased, given, or devised for the support of any particular ministry, or mode of worship, and all churches and other houses built for the purpose of public worship, and all lands and donations of any kind of property or estate that have been or may be given, granted or devised to·any church or; re-

ligious denomination, religious society or congregation within the State for their respective use, shall be and remain forever to the use and occupancy of that church or denomination, society or congregation for which the glebes, lands, tenements, property and estate were so purchased, given, granted or devised, or for which such churches, chapels or other houses of public worship were built; . . . .

§ 61-6. *House on vacant land vests title.*—All houses and edifices erected for public religious worship on vacant lands, or on lands of the State not for other purposes intended or appropriated, together with two acres adjoining the same, shall hereafter be held and kept sacred for divine worship, to and for the use of the society by which the same was originally established.

Defendants submit that the quoted statutes were enacted in the very early years of our State, 1776 and 1778, and that while G.S. 61-6 has received no construction by our appellate courts, that the clear intent of the statutes is to create statutory exemptions with respect to the tenure of property specifically used for religious purposes. They further submit that G.S. 61-3 adopts "the general proposition that church property must remain forever to the use and benefit of the congregation"; that with regard to real property, G.S. 61-6 limits this protection to the land under or surrounding buildings constructed for religious use. They concede that G.S. 61-4 (enacted in 1855 and amended in 1889) grants trustees of religious bodies the authority to *mortgage, sell* or *convey* land belonging to the body, but argue that the authority given does not authorize the sale of church property under execution.

Plaintiff's argument with respect to the history and intent of the quoted statutes is briefly summarized as follows: The statutes arose out of the disruption of civil affairs occasioned by the American Revolution and the establishment of new governments in the American colonies. Prior to the revolution, the Episcopal or Anglican church was the established or official church in North Carolina as was true in other colonies. Upon the establishment of a new government in North Carolina, the Anglican church was officially disestablished by the Constitution of 1776. The question was then raised as to what would happen to the lands then held by the church, there being some authority at that time supporting the view that property held by the

church should be forfeited to the State. See *Terrett v. Taylor*, 13 U.S. (9 Cranch) 43, 3 L.Ed. 650 (1815). To clarify the fate of church lands, the statute now codified as G.S. 61-3 was enacted in 1776. The statute now codified as G.S. 61-6 was enacted in 1778 for purpose of covering those cases where church houses had been built on unused or unappropriated land to which no one had title.

While the stipulated facts indicate that plaintiff filed a notice and claim of lien for the labor and materials furnished defendants, the stipulation does not show that the judgment entered pursuant to defendants' confession created a laborer's and material furnisher's lien as provided by G.S. Ch. 44A. That judgment is not a part of the record on appeal. Nor does the record disclose that the execution issued was pursuant to Ch. 44A, therefore, we consider the question presented on the assumption that the execution was issued pursuant to G.S. 1-302 et seq. That being true, we do not discuss the applicability of Article X, § 3, of the State Constitution and statutes enacted pursuant thereto.

There being no provision in our Constitution exempting church property from execution, unless exempted by statute, said property is subject to sale under execution. *Rector v. Fleming*, 174 Misc. 473, 20 N.Y.S. 2d 597. (Sup. Ct., Special Term, where the court discusses this issue), *aff'd*, 260 App. Div. 930, 23 N.Y.S. 2d 46 (1940), *aff'd*, 285 N.Y. 706 (1941); 76 C.J.S., Religious Societies, § 63, page 840. Defendants contend that the words of G.S. 61-3 " . . . shall be and remain forever to the use and occupancy of that church . . . " creates such an exemption. We reject that contention. We think the quoted words have to be considered in the context of the time they were written and of wordage required by ancient English law and custom to create a fee simple estate. While contemporary attorneys continue to employ many of the old terms in our deeds of conveyance, i.e., to John Doe, "his heirs and assigns forever", we know they are not always necessary. In 7 Thompson, Real Property, § 3132, at 14, 15 (J. Grimes repl. 1962), we find another example: " . . . A grant to one and his heirs carries with it the estate to his assigns by operation of law, and the use of the words 'assigns' or 'assigns forever' has no effect to convey land or enlarge the grant". We hold that the quoted words from G.S. 61-3 do not have the effect of exempting church property from execution.

Clearly, defendants' contention with respect to G.S. 61-6 has no merit. There is no showing that defendants' church building is located on " . . . *vacant* lands, or on lands of the State not for other purposes intended or appropriated, together with two acres adjoining the same . . . . " (Emphasis added.) On the contrary, defendants' verified motion refers to "its (defendants) real estate which consists of the church sanctuary and the lot on which it is built."

In *Fishel and Taylor v. Church*, 22 N.C. App. 647, 207 S.E. 2d 330 (1974), although the question presented in this case was not raised, this court held that church property is subject to sale to satisfy the judgment of an architect.

For the reasons stated, the judgment appealed from is

Affirmed.

Judges HEDRICK and MARTIN concur.